**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

ENNIS LEE BROWN,

                Plaintiff,

    v.                                     **Case No. 16-cv-241-pp**

JOHN AND JANE DOES, sued as
"CO John Does and CO Jane Does,"
Milwaukee County Sheriff's Dept.,

                Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO
PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2), DENYING PLAINTIFF'S
MOTION TO APPOINT COUNSEL (DKT. NO. 6), SCREENING PLAINTIFF'S
COMPLAINT (DKT. NO. 1), AND DIRECTING PLAINTIFF TO FILE AN
AMENDED COMPLAINT BY July 1, 2016**

---

The *pro se* plaintiff, Ennis Lee Brown, is a Wisconsin state prisoner. He

filed a complaint alleging that the defendants, John Doe and Jane Doe officers

employed at the Milwaukee County Sheriff's Department, violated his

constitutional rights. In this order, the court grants the plaintiff's motion to

proceed *in forma pauperis*, screens the plaintiff's complaint, and directs the

plaintiff to file an amended complaint curing the deficiencies in the original

complaint if he wants to proceed.

**I.    MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

The Prison Litigation Reform Act applies to this case because the plaintiff

was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows

Case 2:16-cv-00241-PP   Filed 05/31/16   Page 1 of 15   Document 8

a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350.00 filing fee over time through deductions from his prisoner account. Id.

On March 2, 2016, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $12.24. Dkt. No. 5. The plaintiff paid the fee of $12.25 on March 15, 2016. Accordingly, the court will grant the plaintiff's motion for leave to proceed without pre-paying the filing fee and allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.    SCREENING OF THE PLAINTIFF'S COMPLAINT

The law allows a court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895,

2

900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. <u>Neitzke</u>, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff shall provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

Case 2:16-cv-00241-PP   Filed 05/31/16   Page 3 of 15   Document 8

In considering whether a complaint states a claim, courts should follow the principles set forth in Twombly by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. Id. If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court must give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A. **Allegations in the Complaint**

Although currently incarcerated at the Waupun Correctional Institution, the plaintiff's allegations mostly involve his detention at the Milwaukee County Criminal Justice Facility (MCCJF). The two exceptions to this are his first claim, part of which appears to have taken place in or near a courtroom, and his last claim, part of which took place at Dodge Correctional Institution. The court has grouped the plaintiff's allegations into the following six claims.

4

> 1. *March 29, 2013: Excessive Force and Failure to Provide Medical Attention*

The plaintiff alleges that on March 29, 2013, Deputy Schroeder of the Milwaukee County Sheriff's Office used excessive force, by continually stunning him with a stun belt which burned two circles in his left arm, as he was chained in a wheelchair and unable to breathe through the bag over his head. Dkt. No. 1 at 2. He alleges that Sergeant Sawczuk of the Milwaukee County Sheriff's Department was in court and supervising Deputy Schroeder. Sawczuk failed to stop Schroeder and get the plaintiff medical attention, both at the time of the incident and after the plaintiff returned to MCCJF. Id. Sergeant Sawczuk also prevented MCCJF staff and nurses from helping the plaintiff when he was bound in the wheelchair and being stunned in the Jail. Id. at 3.

> 2. *March 29, 2013 – October 28, 2013: MCCJF Conditions*

The plaintiff alleges that during the time he was in MCCJF, he was punished on "numerous occasions," placed in segregation by John and Jane Does, and fed NutraLoaf. Id. at 3.

On March 29, 2013, Lieutenant Finkley, under the orders of his supervisor, placed the plaintiff in segregation and on suicide watch. Id. The plaintiff was on suicide watch from March 29, 2013, through April 15, 2013, and held in segregation, during which time he indicates that he was being punished. Id. CO Jane Does and John Does "attempted to force me to eat Nutra-loaf and would not feed me or get me medical help!" Id. at 3, ¶ 5.

5

From March 29, 2013, through April 20, 2013, the plaintiff was not allowed out of his cell to shower or use the phone. Id. at 4. From March 29, 2013 through October 28, 2013, Lieutenant Finkley, Lieutenant Briggs, Lieutenant Anderkoski, Lieutenant Reeves and Lieutenant Taylor, "under the orders of their supervisors (Jane & John Does)," repeatedly refused to allow the plaintiff to shower for fifteen to twenty-seven days at a time, or to leave his small jail cell. Id. at 4, ¶ 7.

### 3. *July 30, 2013: Suicide Attempt*

On July 30, 2013, while being held in segregation and on suicide watch, the plaintiff asked CO Scherrer to call a mental health social worker. Id. at 4, ¶ 8. One hour later, Jane Doe came to the cell and as the plaintiff began to tell her his issue, Jane Doe started to yell and curse at him stating, "I don't have time for this shit," and began to walk away. Id.

The plaintiff removed his t-shirt, ripped it, and tied it around his neck. Id. The Jane Doe social worker, Lieutenant Reeves, CO Scherrer, Captain Garth-Dixon, and Jane and John Does all watched as the plaintiff began to pass out, but they did not enter his cell. Nurse Vicki then forced them to enter and remove the t-shirt, but she was not allowed to check the plaintiff out to make sure he was okay. Id. at ¶ 9.

CO Scherrer then "wrote [the plaintiff] up for attempting suicide." Id. Lieutenant Reeves ordered CO Scherrer to punish the plaintiff and not feed him his regular food while he was on suicide watch. Id. at ¶ 10. By order of the Jail supervisors (Jane Doe and John Doe), the plaintiff was not given medical or

6

mental health after the suicide attempt suicide. He was kept in the disciplinary section of the Jail where he could not be monitored. Id. at ¶ 12.

### 4. February 6, 2013: Excessive Force

On February 6, 2013, the plaintiff was on suicide watch in the disciplinary part of the Jail when the "Tactical Team attempted to pull me through the food trap as CO Hannah was removing the rib belt and hand cuffs." Id. at 4 ¶ 13. This caused the handcuffs to cut into his wrists and forearms; he alleged that he could not put much weight on his wrists and forearms or use them. Id. The plaintiff alleges that on the same date, Lieutenant Anderkowski, Lieutenant Briggs, Lieutenant Montoya, Lieutenant Reeves, and CO John Does & Jane Does assaulted him, but that he was denied medical attention right after the assault. Id. at 5, ¶ 14.

About a week after the assault, the plaintiff saw Nurse Practitioner Josie. He received naproxen and an xray, but he did not receive any follow-up medical care. Id.

### 5. Medical Care Issue

On October 18, 2013, the plaintiff asked to see the doctor, because the left side of his face had swollen up and he could not see out of his left eye. Id. at 5, ¶15. He asked Lieutenant Reeves, Lieutenant Montoya, Lieutenant Finkley, Lieutenant Briggs, Lieutenant Anderkowski, Lieutenant John Doe "as well as Nurses Jane Does and COs working on the disciplinary unit." Id. The

plaintiff did not see a doctor until October 25, 2013. The doctor said the plaintiff may have "Mersa"[1] and gave him one dose of antibiotics. Id.

On October 28, 2013, the plaintiff transferred from MCCJF to the Dodge Correctional Institution (DCI). Id. At DCI, he was diagnosed with "Mersa." Id. Treatment of the infection left a very dark area on the left side of his face and a scar. After the treatment, the "Mersa" came back a second time. Id. at ¶ 17. The Jane Doe and John Doe medical staff at DCI had a surgeon come in and cut out the "Mersa" under the plaintiff's left arm. Dr. Seabul and DCI staff would not inform the plaintiff of the process. The plaintiff was told that his arm was cut "to cut the fluids drain by simply cutting the skin. Yet Dr. Seabul went deep and cut out more than my skin." Id.

6.    *Mental Health Care Issue*

The plaintiff alleges that while at MCCJF, "Mental Health Staff" gave him anti-depressants that had dangerous side effects including loss of sleep, loss of appetite, and suicide. Id. at 5 ¶ 16. He told Dr. Jane Doe and Nurse Practitioner Jane Doe, as well as the social workers, about the side effects. But he was still given the medication even after he had attempted suicide more than once. Id.

---

[1] The plaintiff likely refers to "MRSA"—methicillin-resistant staphylococcus aureus, a form of antibiotic-resistant staph infection. See www.mayclinic.org/diseases-conditions/mrsa/basics.

8

### 7.    *Request for Relief*

For relief, the plaintiff seeks $50,000 for each claim, as well as $5.5 million in punitive damages. Id. at 6.

## B.    **Discussion**

It appears that the plaintiff is improperly attempting to bring unrelated claims in a single case. The claims that arose at the MCCJF or are related to the MCCJF (paragraphs 1-4, part of paragraph 5, and paragraph 6) appear to be properly joined. They involve the conditions at the MCCJF and/or the treatment the plaintiff received there, and they overlap as to time and parties involved. The plaintiff's allegations related to his treatment for MRSA at DCI, however, does not belong in this case.

The Seventh Circuit Court of Appeals has held, under the controlling principle of Rule 18(a), Federal Rules of Civil Procedure, that "[u]nrelated claims against different defendants belong in different suits," to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Specifically, Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." George, 507 F.3d at 607.

9

The court in <u>George</u> also reminded district courts that Fed. R. Civ. P. 20 applies as much to prisoner cases as it does to any other case. 507 F.3d at 607. Under Rule 20, multiple defendants may be joined into one case only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."

The plaintiff's complaint violates Rules 18 and 20, to the extent that it advances unrelated claims against multiple defendants at two separate prisons. The <u>George</u> court instructed that such "buckshot complaints" should be "rejected." <u>Id.</u> The court will allow the plaintiff to file an amended complaint in this case incorporating only properly related claims. The plaintiff must pursue any unrelated claims in a separate lawsuit.

In addition, the complaint caption names only John and Jane Doe defendants. The plaintiff is free to refer to parties as John and Jane Does if he truly does not know their names; in such a circumstance, he can use to discovery to learn their names later. But it is clear from the body of the complaint that the plaintiff knows the names of many of the individuals he wishes to sue. For example, in paragraph 1, the plaintiff alleges that Deputy Schroeder stunned him and that Sergeant Sawczuk failed to treat him. In paragraph 4, the plaintiff alleges that Anderkowski, Briggs, Montoya, Reeves, and CO John & Jane Does assaulted him. Almost all of the other paragraphs in the complaint name individual defendants. Yet the plaintiff has not included

10

any named individuals as defendants in the caption of his complaint—which means that he is not suing them. If the plaintiff wants to sue any of these individuals in this lawsuit, he must include their names in the caption of the complaint—in other words, on the first page, where the form asks for the names of the defendants.

Because an amended complaint supersedes a prior complaint, anything the plaintiff does not put into in the amended complaint (including claims, facts, or the names of defendants) are, in effect, withdrawn. See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056 (7th Cir. 1998). If the plaintiff files an amended complaint, that amended complaint will become the operative complaint in this case, and the court will screen it in accordance with 28 U.S.C. § 1915A. Under those circumstances, the complaint the plaintiff filed on February 29, 2016 will no longer be in effect.

The court also advises plaintiff that 42 U.S.C. §1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996). The doctrine of *respondeat superior* (supervisory liability) does not apply to cases filed under 42 U.S.C. §1983. See Pacelli v. deVito, 972 F.2d 871, 877 (7th Cir. 1992). Section 1983 does not create collective or vicarious responsibility. Id. Thus, with respect to any claim or claims that the plaintiff may bring in his complaint, he must identify the individual defendants and explain how each individuals actions (or failure to take action) violated his constitutional rights.

11

### III. MOTION TO APPOINT COUNSEL

The plaintiff has filed a motion to appoint counsel. He explains that his imprisonment will limit his ability to litigate this case, and that this case involves numerous complex issues. The plaintiff also states that he has limited access to the library and limited knowledge of the law.

In a civil case, the court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on their own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks, not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

The plaintiff has satisfied the initial requirement of trying to find an attorney on his own. The court finds, however, that at this point, all that is necessary is that the plaintiff file an amended complaint. The court knows that the plaintiff is capable of filing a complaint, and it has told him what he needs to do in the amended complaint. The plaintiff's filings reveal that he has a good

12

grasp of the allegations of his claims as well as an ability to present them to the court.

Almost every inmate who files a lawsuit asks the court to appoint a lawyer. Most of them have no money, have no legal training, and have only limited access to the law library. The court does not have the resources to pay lawyers to represent everyone who asks, and there are not enough volunteer lawyers to provide counsel for everyone who asks. This means that the court is able to appoint counsel only in those cases where the issues are so complicated that the plaintiff cannot explain them himself. At this point, the plaintiff appears quite able to explain his issue himself. The court will deny his motion without prejudice; if the issues become more complicated at a later date, the plaintiff may renew his request.

## IV.    CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 6.

The court **ORDERS** that on or before **July 1, 2016**, the plaintiff shall file an amended pleading curing the defects in the original complaint that the court describes above. **If the plaintiff fails to file an amended complaint by July 1, 2016, the court may dismiss this case without further notice or hearing on the next business day.**

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $337.75 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **ORDERS** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter. Because the clerk

14

electronically scans and enters onto the docket each filing the clerk receives, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should retain a personal copy of each document filed with the court.

The court further advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the Warden of Waupun Correctional Institution.

Dated at Milwaukee, Wisconsin this 30th day of May, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

15