UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ENNIS LEE BROWN,

Plaintiff,

v.                                                      Case No. 16-cv-241-pp

CAPTAIN GARTH-DICKENS; LT. REAVES;
LT. BRIGGS; LT. MONTANO;
LT. ANDRYKOWSKI; LT. ARTUS;
CO SCHERRER; DEPUTY MCCOY;
DEPUTY SCHROEDER; SGT. SAWCZUK;
NURSE PRACTITIONER DOE; DR. JANE DOE;
NURSE VICKIE; MALINDA, *Social Worker Doe*;
CO WILBORN; MAJOR AMBROSE; NURSE BRENDA 1;
NURSE BRENDA 2; SARA, *Social Worker Doe*;
DEPUTY JOHN DOES, *sued as Deputy John Does 1-4*;
CO MIZDIAK; CO HUBBER;
CO YANG; CO WEBB; CO HANNAH; CO RUIZ;
CO MERCADO; CO BRIGGS; and CO STEPHEN;

Defendants.

---

**ORDER DENYING DEFENDANTS' AMENDED MOTION TO DISMISS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. NO. 43), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO AMEND (DKT. NO. 72), GRANTING PLAINTIFF'S MOTION FOR CONTINUANCE OR STATUS OF CASE (DKT. NO. 73), DENYING PLAINTIFF'S PETITION TO LIFT STAY (DKT. NO. 74) AND DIRECTING BRIEFING ON THE ISSUE OF MISJOINDER OF PARTIES**

---

Plaintiff Ennis Lee Brown, who is incarcerated at the Waupun Correctional Institution, alleges that the defendants violated his constitutional rights when he was confined at the Milwaukee County Jail. Dkt. No. 10. The defendants have filed an amended motion to dismiss for failure to exhaust administrative remedies. Dkt. No. 43. The plaintiff has filed a motion to amend,

1

dkt. no. 72, a motion for continuance or status of case, dkt. no. 73, and a petition to lift stay of proceedings on the merits, dkt. no. 74. The court will deny the defendants' motion to dismiss, deny without prejudice the plaintiff's motion to amend, grant the plaintiff's motion for continuance or status of case, and deny the plaintiff's petition to lift stay. The court also will direct the parties to brief the issue of misjoinder of parties.

## I.   PROCEDURAL BACKGROUND

In his amended complaint, the plaintiff alleged that the defendants violated his constitutional rights while he was confined at the Milwaukee County Jail. Dkt. No. 10. The court screened the amended complaint, and allowed the plaintiff to proceed on claims based on six separate incidents. Specifically, the court

> allow[ed] the plaintiff to proceed on the following constitutional claims: (1) Fourteenth Amendment excessive force and Eighth Amendment failure to provide medical care claims against CO Hannah and three John Doe COs, based on the February 6, 2013, incident; (2) Eighth Amendment deliberate indifference claim against Nurse Practitioner Jane Doe and Dr. Jane Doe for continuing to prescribe harmful medication to the plaintiff between November 2012 and June or July 2013; (3) Fourteenth Amendment excessive force claim against Deputy Schroeder and Eighth Amendment deliberate indifference/failure to provide medical care claim against Deputy McCoy, Sgt. Sawczuk and Deputy John Does #1, #2, #3, and #4, related to the March 29, 2013, stun gun incident; (4) Fourteenth Amendment due process and Eighth Amendment conditions of confinement claims, based on being placed in segregation without a hearing and the conditions in segregation, against Major Jane Doe, St. Sawczuk, Lt. Finkley and Deputy John Doe #1; (5) Eighth Amendment deliberate indifference claim against Jane Doe #2, Jane Doe #3, Lt. Reeves, Capt.

2

> Garth Dixon, Lt. Artison and CO Scherer based on the
> July 30, 2013, suicide attempt; and (6) Eighth
> Amendment deliberate indifference/medical care claim
> against CO John Doe #6, CO John Doe #7, CO John
> Doe #8, Lt. Reeves, Lt. Briggs, Lt. Finley, Lt. Montoya,
> Lt. Anderkowski, Lt. Artison, Nurse Jane Doe #3,
> Nurse Jane Doe #4, Nurse Jane Doe #5, Nurse Jane
> Doe #6, CO #6, CO #7, CO #8, CO #9, CO #10 and CO
> #11 based on the plaintiff's face and MRSA.

Dkt. No. 11 at 8.

On October 28, 2016, the defendants filed a motion to dismiss the plaintiff's case. Dkt. No. 33. The brief in support of the motion argued that the plaintiff had not exhausted his administrative remedies before filing the federal lawsuit, as required by the Prison Litigation Reform Act ("PLRA"). Dkt. No. 34 at 1. The plaintiff filed an opposition brief on November 3, 2016. Dkt. No. 41. That same day, the defendants amended their motion to dismiss. Dkt. No. 43. The plaintiff objected to the amended motion. Dkt. No. 45.

On November 29, 2016, the court granted the plaintiff's motion to add parties (allowing him to substitute actual names for the Doe defendants), and stayed further proceedings on the merits of the plaintiff's claims until it could resolve the exhaustion issue. Dkt. No. 48. The court substituted the following named defendants in place of the Doe placeholders: Nurse Vicki, Nurse Brenda 1, and Nurse Brenda 2 for "Jane Doe Nurses"; Malinda and Sara for "Social Worker Does"; Officer Wilborn, Officer Mizdiak, Officer Hubber, Officer Yang, Officer Webb, Officer Hannah, Officer Ruiz, Officer Mercado, Officer Briggs, and

Officer Stephen for "Correctional Officer John Does"; and Major Ambrose for "Major Jane Doe." Dkt. No. 48 at 10.[1]

Several days later, the plaintiff filed a motion to amend the complaint. Dkt. No. 49. The court denied that motion without prejudice on January 27, 2017. Dkt. No. 57. The court explained that if it ended up denying the defendants' motion to dismiss on exhaustion grounds, the plaintiff could renew his motion to amend the complaint and amend parties by filing a letter asking the court to allow him to do so. Id. at 1.

After the parties had fully briefed the defendants' motion to dismiss on exhaustion grounds, the plaintiff filed another motion to amend/add parties. Dkt. No. 72. In this motion, the plaintiff asked to substitute the real names of more of the Doe defendants, but also asked to add several claims and to add several new defendants. Id. at 1-6.

Nine months passed after the plaintiff filed his last pleading regarding the defendants' motion to dismiss. Because of that length of time, the plaintiff filed a motion asking the court either to "reinstate the proceedings and advance the case," or to explain why the court had not decided the pending issues yet. Dkt. No. 73. Another three months passed, and because he had not heard anything, the plaintiff filed a petition to lift stay, arguing that the stay had been in place for an "unusually long" time. Dkt. No 74.

---

[1] These defendants have not yet been served with, or answered, the complaint.

4

## II.   FACTS RELEVANT TO ALLEGED FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES[2]

The plaintiff was confined at the Milwaukee County Jail from July 27, 2012 until October 28, 2013. Dkt. No. 34 at 1.

During that time, the jail maintained a grievance procedure by which an inmate could file a grievance about "an issue personally affecting that inmate in the area of health, welfare, services, jail personnel, rule or procedure." Id. at 4. After booking into the jail, inmates received a copy of the jail's Inmate Handbook, which included information about the jail's grievance procedure. Id. at 5.

The parties dispute whether the plaintiff received the jail's Inmate Handbook. According to the defendants, the plaintiff received a copy of the handbook on July 27, 2012, the day he booked into the jail. Id. at 6. The plaintiff avers that he didn't receive a copy of the jail's Inmate Handbook after booking into the jail on July 27, 2012, dkt. no. 52 at ¶3, and that he didn't sign the required "acknowledgement" to receive the Inmate Handbook on that day, id. at ¶5. The plaintiff asserted that he first became aware of the jail's grievance procedure on or about February 14, 2013. Id. at ¶6.

The parties also dispute whether the plaintiff had access to grievance forms during the relevant period and whether he filed any grievances related to his claims. According to the defendants, consistent with the grievance policies in place during the relevant period, every jail housing unit/pod had grievance

---

[2] The court takes the facts from the defendants' brief in support of their motion to dismiss, dkt. no. 34, and from the plaintiff's sworn response to the defendants' amended motion to dismiss, dkt. no. 52.

5

forms available for inmates. Dkt. No. 34 at 5. The master list of all the

grievances for the plaintiff indicates that during the fifteen months the plaintiff

was in the jail, he filed no grievances concerning any of the issues he raises in

this litigation:

- [the plaintiff] did not file a grievance complaining that correctional officers used excessive force during a cell search on February 6, 2013.
- [the plaintiff] did not file a grievance complaining that he did not receive medical care after his alleged February 6, 2013 injury.
- [the plaintiff] did not file any grievance relating in any way to the alleged incident(s) of February 6, 2013.
- [the plaintiff] did not file a grievance at any point between November 2012 and July 2013 complaining that the medical staff was prescribing harmful medication.
- [the plaintiff] did not file any grievance concerning his medical care during his detention in the Milwaukee County Jail.
- [the plaintiff] did not file a grievance complaining that anyone had used excessive force against him related to the March 29, 2013 incident in court.
- [the plaintiff] did not file a grievance complaining that anyone was deliberately indifferent to, or failed to provide medical care related to the March 29, 2013 incident.
- [the plaintiff] did not file any grievance relating in any way to the incident(s) of March 29, 2013;
- [the plaintiff] did not file any grievance complaining that he was placed in segregation without a hearing.
- [the plaintiff] did not file a grievance complaining of the "conditions of confinement" he raises in this lawsuit.
- [the plaintiff] did not file any grievance related to a July 30, 2013 suicide attempt, alleging deliberate indifference, or anything else;
- [the plaintiff] did not file any grievance related to his swollen face, or the alleged MRSA infection.

Id. at 7-8.

6

The plaintiff disputes that he had access to grievance forms and that he didn't file any grievances related to his claims (after he allegedly became aware of the jail's grievance procedure on February 14, 2013). According to the plaintiff, he filed a grievance related to the February 6, 2013 assault, and Officer Glavan met with him at least three times about the alleged assault. Dkt. No. 52 at ¶¶7-8. The plaintiff asserted that he asked staff to supply him with pencils and grievance forms for the failure to allow him to shower, failure to provide food, continuous confinement in a cell without recreation for "numerous days" and denial of medical attention. Id. at ¶9. He also claimed that he requested a grievance form on several occasions following the March 29, 2013, incident, but that he didn't receive one. Id. at ¶12. According to the plaintiff, the jail policy for inmates housed in Pod 4-D and for inmates on suicide watch prevented him from exhausting administrative remedies "by rules and denial of writing materials." Id. at ¶¶13-15. He alleged that he was not allowed a grievance or pencil, nor was he released from his cell to write a grievance relating to the July 30, 2013 incident. Id. ¶16. Sara, a social worker, "allegedly" wrote the grievance for the plaintiff about the July 30, 2013 incident, while the plaintiff was on suicide watch in Pod 4-D. Id. at ¶17.

## III.    DISCUSSION—MOTION TO DISMISS/SUMMARY JUDGMENT

As noted above, the defendants filed their original motion to dismiss on October 28, 2016. Dkt. No. 33. They filed the amended motion to dismiss about a week later, on November 3, 2016. Dkt. No 43. The amended motion is the motion before the court. The only difference between the two motions is that

the amended motion includes the text of Civil Local Rules 7 and 56 and Federal Rules of Civil Procedure 56(c), (d), and (e). The defendants didn't file any supporting brief or other materials with the amended motion to dismiss, so the court relies on the brief and declarations the defendants filed in support of their original motion to dismiss, dkt. nos. 34-36.

A.     Standard of Review for Defendants' Amended Motion to Dismiss

The defendants filed a motion to dismiss. They did not seek dismissal under Federal Rule of Civil Procedure 12—the rule that allows a defendant to seek dismissal for failure to state a claim, or lack of jurisdiction, or certain other pleading defects. They asked the court to dismiss the case under the PLRA. In support of the motion, the defendants attached a number of documents, including responses to discovery demands, the Inmate Handbook and grievance forms.

Rule 12 of this court's civil local rules states that "[i]n litigation involving a pro se party where matters outside the pleadings are presented to the Court in conjunction with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) . . ., the procedure set forth in Civil L.R. 56(a)(1) applies." Civil L.R. 12 (E.D. Wis.). In other words, if a party asking a court to dismiss a case asks that court to rely on information that is outside the four corners of the complaint, that party must provide the *pro se* plaintiff with a copy of the rule governing summary judgment. Why does the court require this? Because the law says that if, in considering a motion to dismiss, a court considers "matters outside the complaint," that court must treat the motion to dismiss as a motion for

8

summary judgment. See, e.g., Berthold Types Ltd. v. Adobe Systems, Inc., 242 F.3d 772, 777 (7th Cir. 2001).

Civil Local Rule 56(a)(1) is the local rule that governs summary judgment. That rule says:

> (a) Pro Se Litigation.
>
>> (1) If a party is proceeding pro se in civil litigation and the opposing party files a motion for summary judgment, counsel for the movant must comply with the following procedure:
>>
>>> (A) The motion must include a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion.
>>>
>>> (B)    In addition to the statement required by Civil L. R. 56(a)(1)(A), the text to Fed. R. Civ. P. 56 (c),(d), and (e), Civil L. R. 56(a), Civil L. R. 56(b), and Civil L. R. 7 must be part of the motion.

Although the defendants are not seeking dismissal under Fed. R. Civ. P. 12(b)(6), they nonetheless amended the motion to dismiss to comply with the requirements of Civ. L.R. 56(a)(1). See Dkt. No. 43 at 3-8. Given that, the court will treat the defendants' motion as a motion for summary judgment, will apply that standard of review and will consider the documents that the parties submitted.

B.    Standard of Review for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

9

judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material fact[s]" are those under the applicable substantive law that "might affect the outcome of the suit." <u>Anderson</u>, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

A party asserting that a fact cannot be disputed, or is genuinely disputed, must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C.    <u>Parties' Arguments</u>

The defendants have argued that the court should dismiss the plaintiff's case because he did not exhaust his administrative remedies. Dkt. No. 34 at 10. According to the defendants, the jail provides a grievance procedure the

plaintiff could have used to raise his various issues with jail administration. Id. The defendants state that the plaintiff knew about the jail's grievance procedure because he received a copy of the inmate handbook, which included information about the grievance process, when he booked into the jail in July 2012. Id. They also state that the plaintiff did not file a single grievance in 2012 or 2013 addressing any of the claims he raises in this case, and therefore, that he did not exhaust his administrative remedies. Id.

The plaintiff responds that he exhausted all available administrative remedies. Dkt. No. 52 at ¶35. He asserts that he filed several grievances from February 6, 2013 through September 2013; that he was denied access to the complaint system on February 6, 2013[3]; that he filed a grievance about the use of excessive force for the March 29, 2013 incident which led to the reassignment of Sergeant Mary Sawczuk and Deputy John Schroeder from Branch #12; that he filed a grievance about the conditions and being held in Pod 4-D of the jail; and that "on numerous occasions," he was not allowed to file grievances while on suicide watch and housed in Pod 4-D, "until later dates or not at all." Id. at ¶33. The plaintiff maintains that he attempted to exhaust administrative remedies and that, when staff or jail policy did not interfere or prevent him from doing so, he did exhaust the remedies he had. Id. at ¶35.

The defendants' reply brief, dkt. no. 66, references the plaintiff's response to their original motion to dismiss, dkt. no. 41, and not the plaintiff's response to their amended motion to dismiss, dkt. no. 52. In their reply brief,

_____

[3] As stated above, the plaintiff claims that he became aware of the grievance system "on or about" February 14, 2013. Dkt No. 52 at ¶6.

11

the defendants erroneously state that the plaintiff didn't file any response specific to their amended motion to dismiss other than his original response; they conclude from this erroneous assertion that the plaintiff intended to rely on his response to the original motion. Dkt. No. 66 at 2. But the plaintiff *did* file a response to the defendants' amended motion to dismiss, aptly titled "Plaintiff Response to the Defendants Amended Motion to Dismiss for Failure to Exhaust Administrative Remedies." Dkt. No. 52. It was in this response that he contended that he had exhausted all available administrative remedies; because the defendants appear to have missed this response, they do not reply to that argument.[4]

> D.   Law Governing Exhaustion of Administrative Remedies

A prisoner cannot file a federal case challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Hernandez v. Dart, 814 F.3d 836, 841-42 (7th Cir. 2016) (citing Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006) (holding that complet[ing] the administrative review process" is "a precondition to [a prisoner] bringing suit in federal court")). Federal courts strictly enforce the exhaustion requirement, and a prisoner fulfills the duty to exhaust by adhering to "the specific procedures and deadlines established by the prison's policy." Hernandez, 814 F.3d at 842

---

[4] The plaintiff filed a reply to the defendants' reply. Dkt. No. 69. The Local Rules do not allow a party to reply to a reply, and the plaintiff did not ask the court's permission to do so. For that reason, the court has not considered the arguments the plaintiff makes in that document. Even though the court did not consider those arguments, however, the court still has come to the conclusion that it should deny the defendants' motion.

(quoting King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015); see also Maddox v. Love, 655 F.3d 709, 720-21 (7th Cir. 2011) (quoting Jones v. Bock, 549 U.S. 199, 218 (2007) (noting that "'the applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself")). Failure to exhaust is an affirmative defense, and the defendants have the burden to prove that the plaintiff did not exhaust his administrative remedies. Hernandez, 814 F.3d at 840 (citing King, 781 F.3d at 893).

Prisoners only required to exhaust only those administrative remedies that are "available" to them. See 42 U.S.C. § 1997e(a); Woodford, 548 U.S. at 93. Administrative remedies are "unavailable" to prisoners where "affirmative misconduct" prevents prisoners from pursuing them. Hernandez, 814 F.3d at 842 (collecting cases); Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (remedies unavailable where prison officials "do not respond to a properly filed grievance"); see also Thomas v. Reese, 787 F.3d 845, 847-48 (7th Cir. 2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); Kaba v. Stepp, 458 F.3d 678, 680, 686 (7th Cir. 2006) (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where prison personnel prevent prisoner access to grievance forms). "Unavailability" extends beyond "affirmative misconduct" to omissions

13

by prison personnel, particularly when staff members fail to inform the inmate of the grievance process. See Hernandez, 814 F.3d at 842; see also King, 781 F.3d at 895-96 (remedies unavailable where prisoner transferred between two correctional facilities had no access to grievance process and where later allotted time for filing grievance was impracticable); White v. Bukowski, 800 F.3d 392, 397 (7th Cir. 2015) (remedies unavailable where prisoner was "[u]ninformed about any deadline for filing a grievance").

E. Application of Law to the Facts Regarding Exhaustion

Because the court must treat the defendants' motion as a motion for summary judgment, the court's task is to determine whether the evidence shows that there are any genuine disputes as to any issues of material fact regarding exhaustion. The court concludes that there are several such genuine disputes.

The parties dispute whether the plaintiff exhausted available administrative remedies. Specifically, the parties dispute whether the plaintiff knew about the jail's grievance procedure, and when. According to the defendants, the plaintiff received an inmate handbook when he booked into the jail in July 2012, and because that handbook contained the grievance procedure, the plaintiff knew knew about the grievance procedure as of July 2012. According to the plaintiff, he didn't receive the jail's inmate handbook in when he booked into the jail in July 2012, and didn't learn about the grievance procedure until about February 14, 2013. "Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have

14

not been told about." Hill v. Snyder, 817 F.3d 1037, 1040 (7th Cir. 2016) (quoting King, 781 F.3d at 896). An inmate must follow specific procedures of a grievance policy "to the extent the policy was available to [him]." King, 781 F.3d at 896; see also Thomas, 787 F.3d at 847 (administrative remedies unavailable where inmate didn't have access to handbook that set forth proper grievance procedure and officer informed inmate that he couldn't file a grievance). If the plaintiff did not get the handbook in July 2012, and did not learn about the grievance procedure until February 2013, he could not have exhausted his remedies at the time of the events in question. The court does not know when the plaintiff learned of the grievance procedure, but the fact that there is a dispute about this fact means that the defendants are not entitled to summary judgment on the ground of exhaustion.

The parties also dispute whether the plaintiff attempted to exhaust the remedies that were available to him. The defendants assert that the plaintiff did not file any grievances about any of the issues he raised in his complaint. According to the plaintiff, he filed a grievance regarding the February 6, 2013, incident (Claim 1); he asked for grievance forms with regard to the March 29, 2013, incident (Claim 3); he asked for grievance forms and pencils with regard to the due process and conditions of confinements claims (Claim 4); and Social Worker Sara allegedly wrote a grievance for him for the July 30, 2013, incident (Claim 5). The fact that there is a genuine factual dispute as to whether the plaintiff exhausted these claims bars summary judgment for the defendants.

15

That leaves the plaintiff's medical care claims (Claims 2 and 6). It isn't entirely clear, but it appears that the parties may dispute whether the jail's grievance procedure applied to the plaintiff's medical care claims. The defendants say it did, and the grievance procedure appears to support their assertion because it directs inmates to file a grievance addressing issues "personally affecting an inmate in the area of health, welfare, a facility operation or service." Dkt. No. 36-1 at 4. Assuming that the plaintiff was required to exhaust as to his medical care claims, however, the court cannot tell on this record whether he failed to exhaust those claims, because as the court found above, there is a genuine dispute as to whether the plaintiff knew of the grievance procedure at the time his medical claims arose.

In short, the genuine factual disputes over whether the plaintiff exhausted available administrative remedies preclude the court from granting the defendants' motion to dismiss. The Seventh Circuit has held that where there are questions of fact regarding whether a petitioner exhausted his administrative remedies, a court should conduct a hearing on exhaustion, and permit any discovery it deems appropriate regarding the exhaustion issue. Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008). The case should proceed to a determination on the merits only if the court determines that the petitioner has properly exhausted his administrative remedies, or that the plaintiff's failure to exhaust was not his fault. Id. If the plaintiff has not exhausted his remedies, and the failure was innocent, the court may give him another chance to exhaust. Id. If the court determines that the plaintiff was at fault for his

16

failure to exhaust, "the case is over." Id. If there comes a point where the court concludes that the plaintiff has exhausted his remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits . . . ." Id.

F.   Failure to List Individuals in the Complaint Caption

The defendants also argued that the court should dismiss claims against any individuals that the plaintiff did not list in the caption of his amended complaint, citing Federal Rule of Civil Procedure 10(a). Dkt. No. 34 at 11. They ask the court to dismiss CO Hannah, Lt. Finkley and Lt. Finley because the plaintiff did not identify them in the caption of the complaint.

It is true that the plaintiff did not list CO Hannah in the caption of his amended complaint (and thus Hannah wasn't included on the docket at the screening stage), but the plaintiff does discuss Hannah in the body of the amended complaint when discussing his first claim. Dkt. No. 11 at 4. The plaintiff identified CO Hannah as one of the Doe defendants, and the court added CO Hannah as a defendant at that time. Dkt. No. 48 at 10. The court will not dismiss Hannah at this point.

Similarly, the plaintiff named Lt. Finkley as a defendant in the amended complaint with regard to Claim 4, dkt. no. 11 at 5-6, but not in the complaint caption. Similarly, the plaintiff named Lt. Finley as a defendant in the amended complaint with regard to Claim 6, dkt. no. 11 at 6-7, but not in the caption of the amended complaint. Finkley and Finley are not defendants at this point, so there is no reason for the court to dismiss them.

## IV.  JOINDER

In reviewing the case to decide the motion to dismiss, the court has had a chance to consider more carefully the various claims the plaintiff has brought against various named defendants. The court should have caught this at the screening stage, but the amended complaint may violate the joinder rule in Fed. R. Civ. P. 20. That rule indicates that a plaintiff may join more than one person in a case if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Seventh Circuit has held that "[u]nrelated claims against different defendants belong in different suits." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). It has warned district courts against allowing a plaintiff to "toss[] . . . a mishmash of unrelated allegations against unrelated defendants" into a single case. Owens v. Godinez, 860 F.3d 434, 436 (7th Cir. 2017) (per curiam). As the court noted above, the plaintiff's claims come from six different incidents on different dates involving different alleged violations.

Before taking any further steps in the case, the court will allow the parties the opportunity to file short briefs on the question of whether the amended complaint violates Rule 20. The court will give the defendants thirty days from the date of this order to file a brief, indicating whether they believe the amended complaint violates Rule 20 and, if so, why. If the defendants file a brief stating that they believe the complaint violates Rule 20, the plaintiff may,

18

within thirty days of receiving the defendants' brief, file a response brief explaining why the amended complaint does not violate Rule 20. Once the plaintiff files his brief, the defendants will have fourteen days to file a reply, if any.

After the parties brief the question of whether the amended complaint violates Rule 20, the court will decide whether to allow the plaintiff to proceed on the complaint as is, or to require him to amend it to address only certain claims, or to dismiss parties under Fed. R. Civ. P. 21. Once the court has settled the Rule 20 issue, it will then decide whether to schedule an evidentiary hearing on the exhaustion issue, and when.

## V.    PLAINTIFF'S MOTIONS

The court noted in the procedural history section that the plaintiff has three motions pending. First, he has filed a motion asking to amend the complaint to add parties "as ordered on Nov. 11, 2016." Dkt. No. 72. The plaintiff asserts that on November 11, 2016, the court gave him "an opportunity to amend adding parties." Id. at 1. The court is not sure what the defendant is referring to; it did not issue any orders dated November 11, 2016. It *did* issue an order on November 29, 2016. Dkt. No. 48. In that order, the court allowed the plaintiff to add as parties the real names of certain of the Doe defendants. Id. at 10. In his pending motion to amend, the plaintiff seeks to add the full names of some of the Doe defendants (for whom he had only first or last names previously), and to add the names of some of the as-yet unidentified Doe defendants. Dkt. No. 72 at 1. He also seeks, however, to add

19

new claims (some against new defendants), and to amend certain claims he'd already brought. Id. at 2-6.

The court will deny this motion without prejudice. As the court discussed above, the amended complaint already includes claims arising out of six different incidents, involving numerous defendants. It may violate Rule 20. If that is the case, it would make matters worse to *add* more claims and more defendants. The plaintiff may renew this motion after the court decides the Rule 20 issue, *if* the defendants/claims he wants to add would not violate Rule 20.

The plaintiff also filed, within three months of each other, two motions demanding that the court move his case along. On November 6, 2017, the court received the plaintiff's motion asking the court to either lift the stay and advance the case, or explain to him why his case is taking so long. Dkt. No. 73. About three months later, the plaintiff filed a motion, asking the court to lift the "unusually long" stay and to proceed with the case. Dkt. No. 74.

The court has explained to the plaintiff in some of his other cases that the court's caseload is fairly heavy, in part because one of the four judges in Milwaukee passed away a year and a half ago, and no new judge has been appointed to succeed him. The court has been unable to act on many cases as quickly as it would like. In addition, the plaintiff has filed a number of cases, and has filed many motions and other pleadings in each of those cases. It takes time for the court to review all of the pleadings in his cases, just as it takes time for the court to review the pleadings in all of the other cases it has. The

20

court regrets that it has taken it a long time to resolve the issues in this order. But this order should "advance" the case, as the plaintiff has requested in his November 6, 2017 motion.

As to the plaintiff's request that the court lift the discovery stay, the court will deny that motion without prejudice. As explained above, the court stayed proceedings on the merits until it could decide the defendants' motion to dismiss on exhaustion grounds. Although the court has decided that motion, it needs to determine exactly which claims are proceeding forward, and it can do that only by resolving the Rule 20 issue. Once the court has resolved the Rule 20 issue, the court will consider whether to lift the discovery stay, and what next steps to take.

## VI.    CONCLUSION

The court **DENIES** the defendants' amended motion to dismiss for failure to exhaust administrative remedies. Dkt. No. 43.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to amend adding parties. Dkt. No. 72.

The court **GRANTS** the plaintiff's motion for continuance or status of case. Dkt. No. 73.

The court **DENIES** the plaintiff's petition to lift stay. Dkt. No. 74.

The court **ORDERS** that, by the end of the day on **Monday, May 7, 2018**, the defendants shall file a brief regarding whether the amended complaint violates Rule 20, and if so, how. The court **ORDERS** that the plaintiff shall file his response to that brief in time for the court to receive it by the end

21

of the day on **Friday, June 8, 2018**. The defendants shall file their reply, if any, by the end of the day on **Friday, June 22, 2018**.

Dated in Milwaukee, Wisconsin this 30th day of March, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**